UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JUAN CARLOS TOMAS ELIAS,<br>    Plaintiff,<br><br>v.<br><br>PATRICIA HYDE; KRISTI NOEM;<br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY; PAMELA BONDI;<br>MICHAEL NESSINGER; and<br>EXECUTIVE OFFICE FOR<br>IMMIGRATION REVIEW,<br>    Defendants. | C.A. No. 25-cv-540-JJM-AEM |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Juan Carlos Tomas Elias brings this habeas corpus petition under 28 U.S.C. § 2241, asking this Court to release him from the custody of Immigration and Customs Enforcement ("ICE") or, in the alternative, to grant him a bond hearing before an Immigration Judge ("IJ"). ECF No. 1. The Government has moved to dismiss Mr. Tomas Elias's petition, arguing that he is subject to mandatory detention and thus not entitled to a bond hearing, and that he has not exhausted his administrative remedies. ECF No. 7. For the reasons stated, the Court GRANTS Mr. Tomas Elias's petition, and DENIES the Government's Motion to Dismiss.

I. BACKGROUND

A. Statutory and Regulatory Framework

8 U.S.C. §§ 1225 and 1226 are the two provisions of the Immigration and Nationality Act ("INA") that principally govern the removal of noncitizens. *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025). Section 1225(b) applies to "applicants for admission," who are noncitizens "present in the United States who [have] not been admitted." *Id.* (quoting 8 U.S.C. § 1225(a)(1)).[1] Sometimes referred to as the "mandatory detention statute," this provision *requires* the Government to detain noncitizens pending their removal from the United States "if the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." *Chiliquinga Yumbillo v. Stamper*, No. 2:25-cv-00479-SDN, 2025 WL 2783642, at *2 (D. Me. Sept. 30, 2025) (quoting 8 U.S.C. § 1225(b)(2)(A)).

By contrast, Section 1226(a) applies to noncitizens "*already in the country* pending the outcome of removal proceedings." *Gomes*, 2025 WL 1869299, at *2 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).[2] It is referred to as the "discretionary detention statute" because it permits—but does not require—the Government to arrest and detain a noncitizen "[o]n a warrant issued by the Attorney

---

[1] "Admission," in the immigration context, refers to "the lawful entry of [a noncitizen] into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

[2] There is another provision within Section 1226, 8 U.S.C. § 1226(c), that mandates the detention of noncitizens who have been convicted of specified crimes. *Hernandez-Lara*, 10 F.4th at 35. However, because Mr. Tomas Elias has not been convicted of a crime, this provision is not at issue here.

General" or their designees. *Rodriguez v. Bondi*, No. 25-cv-406-JJM-PAS, 2025 WL 2899769, at *1 (D.R.I. Oct. 10, 2025). The Government then may either continue to detain the noncitizen or release them on bond of at least $1,500 or conditional parole. *Id.* (citing 8 U.S.C. §§ 1226(a)(1)-(2)).

The Fifth Amendment's Due Process Clause entitles a noncitizen detained pursuant to the discretionary detention statute to seek review of their detention decision at a bond hearing (also known as a "custody redetermination hearing") before an IJ. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). At that hearing, the Government bears the burden of proving either: (1) "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or (2) "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Id.* If the Government fails to meet this burden, then bond or conditional parole must be granted. *Rodriguez*, 2025 WL 2899769, at *1 (citing *Gomes*, 2025 WL 1869299, at *2; *Bermeo Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 WL 2494530, at *4 (D. Me. Aug. 29, 2025)). If, however, the Government does meet its burden and the IJ determines that the noncitizen must remain in custody, then the noncitizen may appeal the IJ's decision to the Board of Immigration Appeals ("BIA"). *Id.* (citing 8 C.F.R. §§ 1003.19(f), 1003.38).

B.  Factual Background

Mr. Tomas Elias is a native and citizen of Guatemala. ECF No. 1 at 4. He has lived in the United States for the last 8 years, and he has a pending application for a U-Visa.[3] *Id.* at 1.

On September 30, 2025, Mr. Tomas Elias appeared for a hearing at a Providence, Rhode Island courthouse after he was arrested and charged with domestic violence. *Id.* at 1; *see also* ECF No. 1-2 at 6. This charge was later dismissed by state prosecutors. ECF No. 1-3 at 1. After the hearing, ICE officials arrested and detained Mr. Tomas Elias, charging him with having entered the United States without admission or inspection pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) and § 1182(a)(6)(A)(i). ECF No. 7 at 3. ICE later transferred Mr. Tomas Elias to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island, where he currently remains detained. *Id.* at 3.

Following Mr. Tomas Elias's arrest, ICE issued a custody determination to continue his detention without an opportunity to post bond or be released on other conditions. *Id.* at 6. Mr. Tomas Elias subsequently requested a review of this decision at a bond hearing before an IJ. *Id.*

On October 9, 2025, Mr. Tomas appeared before the Chelmsford Immigration Court. ECF No. 7 at 4. At the hearing, the IJ found Mr. Tomas Elias to be statutorily ineligible for bond pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA

---

[3] A U visa is a nonimmigrant visa for victims of certain crimes who have suffered substantial mental or physical abuse and are willing to help law enforcement. *Benitez v. Wilkinson*, 987 F.3d 46, 50 (1st Cir. 2021).

2025). ECF No. 1 at 6 (citing Ex. 3). DHS has placed Mr. Tomas Elias in removal proceedings, and he is next scheduled to appear in immigration court on October 30, 2025. *Id.* at 5; ECF No. 7 at 4.

On October 17, 2025, Mr. Tomas Elias filed the present petition, seeking release from custody or, in the alternative, a bond hearing. ECF No. 1 at 13. The Government objects to his request for further relief. ECF No. 7.

## II. DISCUSSION

### A. Section 1226(a) Applies, Not Section 1225(b)

The Government first argues that Mr. Tomas Elias is subject to mandatory detention under 8 U.S.C. § 1225(b) and thus not entitled to a bond hearing. ECF No. 7 at 4. They contend that he is an "applicant for admission who is treated, for constitutional purposes, as if stopped at the border." *Id.* The Government also relies on *Matter of Yajure Hurtado*, a recent BIA decision finding that IJs lack authority to redetermine the custody of noncitizens who are being held pursuant to Section 1225. *Id.* at 5.

Finally, and most notably, the Government "acknowledge[s] that the questions of law in this case, and the challenges to the government's policy and practice, substantially overlap with" recent court decisions in *Doe v. Moniz*, No. 1:25-cv-12094-IT, 2025 WL 2576819 (D. Mass. Sept. 5, 2025), and *Elias Escobar v. Hyde*, No. 1:25-cv-12620-IT, 2025 WL 2823324 (D. Mass. Oct. 3, 2025). *Id.* at 5-6. The Government states that "[s]hould the Court apply the same reasoning the courts did in those cases

5

to this one, the legal principles espoused in those cases would likely warrant the same conclusion here." *Id.*

The Court finds the reasoning in *Doe*, *Escobar*, and similar cases remains correct. As those courts have explained, Section 1226(a) controls in circumstances like Mr. Tomas Elias's—not Section 1225(b). Specifically, Section 1225(b)(2) authorizes the Government to detain certain noncitizens "*seeking admission into the country*," while Section 1226(a) authorizes the Government to detain certain noncitizens "*already in the country* pending the outcome of removal proceedings." *Doe*, 2025 WL 2576819, at *5 (quoting *Gomes*, 2025 WL 1869299, at *2; *Jennings*, 583 U.S. at 289); *see also Casun v. Hyde*, No. 25-cv-427-JJM-AEM, 2025 WL 2806769, at *2 (D.R.I. Oct. 2, 2025) (distinguishing between Section 1226 and Section 1225); *Elias Escobar*, 2025 WL 2823324, at *3 (same).

In addition, nearly every district court to consider the issue has concluded that "the plain language of the statute, the legislative history, and traditional canons of statutory interpretation each indicate that section 1226(a)" applies to noncitizens who have entered and continuously resided in the country for several years. *Chiliquinga Yumbillo*, 2025 WL 2783642, at *2 (emphasis added); *see also Chogllo Chafla v. Scott*, Nos. 2:25-cv-00437-SDN, 2:25-cv-00438-SDN, 2:25-cv-00439-SDN, 2025 WL 2688541, at *5 (D. Me. Sept. 22, 2025) (collecting cases).

As for the BIA's decision in *Matter of Yajure Hurtado*, "it is not binding and this court 'must exercise independent judgment in determining the meaning of statutory provisions.'" *Elias Escobar*, 2025 WL 2823324, at *3 (quoting *Loper Bright*

*Enters. V. Raimondo*, 603 U.S. 369, 394 (2024)). "The BIA's decision is contrary to this court's uniform approach to interpreting 8 U.S.C. §§ 1225 and 1226." *Id.* (citing *Doe*, 2025 WL 2576819, at *5). *Matter of Yajure Hurtado* is also at odds with the BIA's own precedent and with decades of Department of Homeland Security ("DHS") practice. *Id.* (citing *Chogllo Chafla v. Scott*, 2025 WL 2688541, at *8). As such, this Court affords little to no deference to that decision.

Here, Mr. Tomas Elias is already in the country and has continuously resided in it for the past eight years. *Doe*, 2025 WL 2576819, at *5; *Elias Escobar*, 2025 WL 2823324, at *3. Given that the Government concedes that the questions of law here "substantially overlap with those at issue in *Doe* and *Escobar*," this Court finds—like those courts before it—that Section 1226(a) governs Mr. Tomas Elias's detention.

B. **Exhaustion of Administrative Remedies**

Next, the Government argues that Mr. Tomas Elias should be required to exhaust his administrative remedies before pursuing his habeas challenge. ECF No. 7 at 4. For the same reasons articulated by this Court in *Casun v. Hyde*, 2025 WL 2806769, at *3, and *Rodriguez v. Bondi*, 2025 WL 2899769, at *3, exhaustion is not necessary here.

First, no statute at issue requires exhaustion. *Id.* (citing *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827, at *5 (D. Mass. Aug. 19, 2025); *Gomes*, 2025 WL 1869299, at *4-5). This case is instead governed by the "more permissive" common-law exhaustion standard. *Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021). Under this standard, the court may find exhaustion to be unnecessary where "a

particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim" or "if a substantial doubt exists about whether the agency is empowered to grant meaningful redress." *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (citing *McCarthy v. Madigan*, 503 U.S. 140, 147-48 (1992)).

Here, Mr. Tomas Elias is being held in an ICE detention facility against his will without clear reason—a "severe form of irreparable injury." *Rodriguez*, 2025 WL 2899769, at *4 (quoting *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005)); *see also Casun*, 2025 WL 2806769, at *3. In addition, he is challenging the constitutionality of his detention, which is an area that the Immigration Court and the BIA lack any authority to adjudicate. *Rodriguez*, 2025 WL 2899769, at *4 (citing *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010)).

The Court also finds it particularly striking that the Government is arguing, on the one hand, that Mr. Tomas Elias should be required to exhaust his administrative remedies before an IJ, who will make a custody redetermination in his case, while simultaneously arguing that he is statutorily ineligible for such a hearing. ECF No. 7 at 5-6. These two positions are plainly at odds with one another.

Accordingly, the Court finds that waiver of any exhaustion requirement is appropriate and proceeds to the merits of Mr. Tomas Elias's petition.

## C. Due Process

A court may grant a writ of habeas corpus where a petitioner demonstrates that his detention violates the Constitution or laws of the United States. *Chang*

*Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *10 (D. Me. Sept. 29, 2025) (citing 28 U.S.C. § 2241(c)). The petitioner must prove their detention is illegal by a preponderance of the evidence. *Id.* (citing *De Oliveira v. Joyce*, No. 2:25-cv-00291-LEW, 2025 WL 1826118, at *4 (D. Me. July 2, 2025)). Mr. Tomas Elias brings this habeas petition for violation of his due process rights under the Fifth Amendment. ECF No. 1 at 12.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be … deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. This right applies to all persons in the United States regardless of citizenship status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Additionally, noncitizens being detained pursuant to Section 1226(a) are "entitled to the full procedural safeguards" of the Due Process Clause. *Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sept. 9, 2025).

To determine whether detention violates a noncitizen's procedural due process rights, courts employ the three-part *Mathews* balancing test to determine whether a noncitizen's detention violates procedural due process. *Hernandez-Lara*, 10 F.4th at 27-28 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). The test considers: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and

9

administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### a. Private Interest

Here, there is no question that Mr. Tomas Elias's private interest is strong. He asserts "the most elemental of liberty interests—the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Other courts have noted that, "while detention during deportation proceedings undoubtedly is 'a constitutionally valid aspect of the deportation process,' this does not diminish [the detainee's] liberty interest." *Bermeo Sicha*, 2025 WL 2494530, at *6 (quoting *Demore v. Kim*, 538 U.S. 510, 523 (2003)).

ICE has denied Mr. Tomas Elias the opportunity to challenge his detention, which "is tantamount to denying due process." *Chang Barrios*, 2025 WL 2772579, at *11 (citing *Hernandez-Lara*, 10 F.4th at 28). "Due process *requires* the government to either (1) prove by clear and convincing evidence that [the noncitizen] poses a danger to the community or (2) prove by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-Lara*, 10 F.4th at 41 (emphasis added). The Government has failed to provide Mr. Tomas Elias with a bond hearing or to even meet its burden for continued detention. As such, the first *Mathews* factor weighs strongly in his favor.

### b. Risk of Erroneous Deprivation

The second factor—the risk of erroneous deprivation of the liberty interest—is large where the Government has made no showing that the noncitizen presents any

public safety or flight risk. *Chang Barrios*, 2025 WL 2772579, at *11. Here, the Government has not made such a determination. In fact, it argues that it need not make such a showing. ECF No. 7 at 4. Accordingly, the second *Mathews* factor weighs in Mr. Tomas Elias's favor.

### c. Government Interest

The third and final factor concerns the Government's interest. The Government has not raised any interest in Mr. Tomas Elias's continued detention without a bond hearing. This tends to weigh against the Government. *See Chang Barrios*, 2025 WL 2772579, at *11. Indeed, the public interest typically weighs against "unnecessary detention," given that it "imposes substantial societal costs" and "separates families and removes from the community breadwinners, caregivers, parents, siblings, and employees." *Hernandez-Lara*, 10 F.4th at 33 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020)).

The balance of the *Mathews* factors weighs in Mr. Tomas Elias's favor. As such, the Government has unconstitutionally deprived him of his due process rights by holding him without having completed a bond hearing. He is entitled to such a hearing. As the Government has not put forth any evidence to suggest that Mr. Tomas Elias is a flight risk or poses a danger to the community, the Court finds that his immediate release is appropriate.

### III. CONCLUSION

Accordingly, the Court GRANTS Mr. Tomas Elias's habeas petition. ECF No. 1. The Government is ORDERED to provide him with a bond hearing before an IJ

11

pursuant to 8 U.S.C. § 1226(a) within ten days of the date of this order. Further, the Court ORDERS the Government to release Mr. Tomas Elias immediately pending the bond hearing. The Government shall set minimal release conditions that will reasonably assure Mr. Tomas Elias's appearance at the bond hearing. Finally, the Court ORDERS the Government to file a status report within five days of Mr. Tomas Elias's bond hearing, stating whether he has been granted bond and, if his request for bond was denied, the reasons for that denial.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

October 27, 2025

12